Appellant and Cross-FLE Byron Financial Services Seated at counsel table with me is Ms. Abigail Schwab from my office who was here on the briefs. Your Honor, there are really basically two issues in front of the court. This is a case, first of all, involving a remitter given by the district court for a jury verdict, and second of all, it's a case where the cross-appellant, I'll just refer to them as Christopher Wright or Wright, alleges that the judge wrongfully denied his motion for judgment as a matter of law based on the fact that there was an issue tried that was not part of the pleadings. With regard to the issue of the remitter, it's a standard of abuse of discretion, Your Honors, the evidence is to be viewed in the light most favorable to the jury's assessment of damages. The law is clear that the district court should only grant a remitter when the verdict is so grossly excessive as to shock the jury's conscience. That's the Norton v. Caremark case, Your Honors. The law is also clear that the trial court should not substitute its judgment for that of the jurors if the verdict is supported by the evidence. Your Honor, in this case there was direct evidence in support of the jury's verdict. That evidence was offered as Byron Financial's Exhibit X at trial, and Your Honors will find it at the appendix at page 1641 to 1642. What was the evidence for $500,000? It was Christopher Wright's statement in the Exhibit X, Your Honor, at appendix 1641 to 1642. That was it, though, wasn't it? That was the only direct evidence for $500,000, Your Honor. And he made the statement, we really need to, we really need to get you to know where we've got $3.5 million to $4 million of business paid in order to justify paying out $500,000. Now the evidence was clear that he got more than the $4 million in business paid that he was looking for, and so the jury was free to consider this evidence as evidence that he owed Byron Financial $500,000. The jury gets to decide the weight of the evidence, not the district court, not the parties. And so in this case... It looks like a kind of straw in the wind, though, in the context of this trial. Your Honor, there was a lot of accounting evidence introduced in this trial, and a lot of that accounting evidence was contradictory. And so in this case, the standard is not did the jury use the evidence that we would have used. The standard is not did the jury use the evidence that district court thought was the best evidence. They were outlawed 63 minutes, right? I believe that was correct, Your Honor, and I think that that was correct because, frankly, I think at the conclusion of the trial they had judged the credibility of the witnesses. Right. So they said, well, we heard there's $500,000, so that's what we're going to give. And you say that's good enough. I say that's good enough, Your Honor, because that's... That's not a challenge. I just want to make sure. Yes, Your Honor, I do. Because the standard of review is not best evidence. I understand. And so it's any evidence that is reasonable evidence. In this case, the jury had reasonable evidence. This evidence was introduced without objection. So why did the district court pass it over? I believe that the district court substituted its view of the evidence  I believe that that is an abuse of discretion. Because the evidence was admitted into the record without objection, the jury was free to consider it. Of course, you know, a verdict can be set aside for being grossly excessive or contrary to the great weight of the evidence, right, as a matter of common law procedure? That is correct, Your Honor. And that's what the judge did here, right? I believe in this case the judge substituted her view of the evidence for the jury's view. I understand. That's your characterization of it. But the judge's characterization, I guess, is different. And that is that this is simply not an acceptable, on this record, acceptable number. Am I remembering this correctly? Well, the judge's order for the remitter was extremely short, Your Honor, and so the district court did not really go into its reasoning. But in this case, what the district court did was the district court, I believe, looked at the accounting evidence in the case and made its own calculation. The district court's calculation was different than the party's calculations during the course of the case. Yeah, there are some numbers that need to be examined at the very least, assuming the remitter is disturbed in some way. Well, I think that's exactly the point, though, Your Honor. I think that this court and the district court shouldn't parse the numbers and try and figure out if they would make the same decision the jury made. That's not the province of the court. That's why we have a jury under the Seventh Amendment. And so in this case, the jury had evidence supporting the $500,000 figure, and they chose to use it. This evidence was admitted without a limiting instruction. It was admitted without objection. Well, how was the context, counsel? How was the context of that document anything other than prospective and conjectural? Well, it's not conjectural, Your Honor. The actual statement is, we really need to get to, you know, where we've got $3.5 million to $4 million business paid in in order to justify paying out $500,000. So where's the calculation of $500,000 underlying that? I mean, it's just a throwout. He could have said $300,000. He could have said $100,000. He says we need more business to justify more payout. How can that be a sufficient direct evidence of actual damage arising from future transactions? In this case, Your Honor, the he was a party opponent. In addition to that, counsel had an opportunity to explain this evidence and the actual statements contained in the voicemail. There was no explanation offered. Did either counsel refer to that in closing argument? No, Your Honor. So you're just pulling it out. This is nothing but ex post argument. Well, it's not ex post argument, Your Honor. In the closing argument, we instead used the plaintiff's financial. Well, it's there, but no lawyer thought it sufficiently significant to refer to the jury. And so the district court, understandably, didn't think that that was a sufficient basis to, by itself, to justify a verdict that was otherwise couldn't be justified from the rest of the record. What's wrong with that analysis? Well, Your Honor, in terms of the parties arguing in the closing arguments, trial is a series of decisions involving what the parties believe will be best. In this case, the decision we made that we believe will be best would be to argue the best case or worst case scenario, rather, from the plaintiff's spreadsheets. Our original ask for the closing was going to be $410,000. Counsel objected in the middle of our closing, and the judge precluded us from using some of that evidence, which is what reduced it in the closing arguments. The law is clear that parties are not limited. The jury is not limited to award the damages asked by the attorneys in closing arguments. And so the jury is also free to... Of course not, but we're talking about an analysis by the district court, whether or not it justified the relief of remittander. That's an analytical question, not an evidentiary question. It is an analytical question, Your Honor, but I believe that the analysis is actually just, is there evidence in support of the jury's verdict? Not is it the best evidence or is it throwaway evidence or is it an offhand statement. It's evidence, and in this case, the evidence exists. The evidence also, accounting-wise, supported damages of $410,000. The district court in this case substituted its opinion of what this voicemail testimony meant for the opinion of the jury, and in doing so, I believe that's an abuse of discretion, Your Honor. The second piece... I'm sorry, Your Honor, were you going to... The second issue in the case is whether or not the insurance cases that were occurred after September 17th of 2013 were properly before the jury. In this case, the parties had... There's a bright line on the date of September 17th, 2013. The parties were operating initially under the terms of a written employment agreement. That written employment agreement is found in the appendix starting at 1404, Your Honors. This written employment agreement was modified by the parties during their relationship. Christopher Wright admitted to one of those modifications, an oral modification, and the oral modification to which he admitted was that the commission payments, and that's on page 2, appendix at 1405, the commission payments themselves would no longer go directly to Byron Financial. He would receive them from the insurance carriers instead. That's contrary to the written terms of the agreement. Christopher Wright admitted that the parties had made that oral modification. The second oral modification that the parties made, and this evidence came in without objection, was that they modified the true-up period following the cessation of their relationship. On appendix at 1407, Your Honors, it's clear that even after the employment agreement terminates, there are post-termination obligations of the parties. In this case, the post-termination obligation involves the commission split, and it states it shall remain in effect for two years following termination of employment. So clearly the terms of the agreement contemplated post-termination performance by the parties. It explicitly says it. In this case, the parties made a second modification to that contract. The second modification they made was they extended the true-up period so that the included case is not ending on the date of termination but ending on December 31st of 2013. This issue was tried expressly to the jury. It is listed in my closing argument where I said exactly those words, Your Honor, and Your Honors will find that in appendix at 1289 to 1290. In this case, Mr. Wright has objected to the issue of modification, but he did not object during the trial to any of the evidence of modification. This issue was clearly tried by consent of the parties. When the issue was raised with the district court, both pre- and post-trial, the district court allowed this evidence in. There was no objection to any of it. Was there any prejudice? There was no prejudice whatsoever to Mr. Wright, and I'm going to be very quick because I'm starting to run into my rebuttal, Your Honor. What about the question of what the parameters of the claim as set forth in the pleadings? The parameters of the contract pled and the suit was filed over is a contract that ended September 17th. The contract ended September 17th, but the performance obligations of the contract pled in the pleadings, Your Honor, continued for years after the termination. That's the section I just read, and so even if the contract terminates, the parties had written performance obligations and that extended beyond the termination of the contract. That's why this evidence was relevant. It was also admitted properly and tried by consent of the plaintiff, Mr. Wright in this case. The cases at issue, the post-September 17th cases, are explicitly listed in plaintiff's own Exhibit 56. That's at appendix at 1488, Your Honors. The cases that plaintiff now claims were not properly in front of the jury were also explicitly listed in plaintiff's Exhibit 12. That's appendix at 1457. I guess there was no attempt to amend the complaint to conform to the proof or anything like that because there was no need as far as you were concerned. Well, we did attempt, Your Honor. We moved at the conclusion of the evidence and then before the jury was charged to amend under Rule 15b. Okay. Now, what Rule 15b says very explicitly is Rule 15b says, 15b2 I'm referring to now, for issues tried by consent, when an issue not raised by the pleadings is tried by the party's express or implied consent, it must be treated in all respects as if it had been raised in the pleadings. But it is the last sentence of Rule 15b, which is cited in the cases that are in our briefs, that is telling. But the failure to amend does not affect the result of the trial of that issue. Counsel, just to clarify, both parties cite that basis in 15b cases. Does Missouri law recognize the principle of trial by consent? Yes. You're confident of that? Because otherwise there would be the eerie issue of whether it's substantive or procedural. I'm confident that parties can try an issue by consent by not objecting, Your Honor, and also Missouri is a fact-pleading state and not a notice-pleading state. Your Honor, unless you have specific questions, now I'm going to reserve my last minute and a half for rebuttal. Thank you. May it please the Court. My name is Brian McGovern, and I represent the appellee Christopher Wright in this case. I'm going to address many of the points raised by counsel because I do very much disagree with the manner in which they've been phrased. But I would suggest there are four principal issues before you through these various briefs. One, did the district court err in not granting judgment as a matter of law in favor of Plaintiff Wright? Two, did the district court err in not granting Wright a new trial? Three, did the district court err in granting Wright's motion for remitter? And the fourth, did the district court err in the damages awarded under the remitter order? I think it's important that this Court has already noted that there was one contract that was pled and there was one contract that was submitted to the jury. They are, in effect, trying to recover on a different contract. They are suggesting, the appellant is suggesting, that, in fact, this voicemail somehow constitutes a contract which is binding upon Christopher Wright, the appellee, despite the fact there is no real offer, acceptance, or consideration. Nor is there any evidence about the $500,000, or as Judge Loken points out, is there any evidence for the basis of the $500,000. So help me with this motion to amend the complaint to conform to the proof. What happened in that? That's not what they did, Your Honor. Well, that's what I'm asking. I didn't think that was... What happened were several things during the course of the trial and prior to the trial. Prior to the trial, there were efforts to try to amend the pleadings to include a claim for quantum merit. That would include the cases, as counsel has pointed out, that would have arisen post-September 17th of 2013. I know that. That was denied. That happens again during the course of the trial. It was also denied. Before closing, again, counsel tries to amend to include quantum merit. The other thing that they did was to try to amend their answer, and that happened during the course of the trial. And what counsel attempted to do during the trial was to amend the answer to take the admission that, in fact, the contract concluded on September 17th, 2013, and change that to a denial such that they would not be bound to that. Now, I think that's significant because when you look at the case and you look through all the briefing, there really is no dispute about the accounting. Counsel says we used different accounting. We didn't. We used the identical accounting, which I'll get to in a minute. Their exhibit, Triple D, our exhibit, 56, were the exhibits that both parties used to go through and try to determine, in fact, what, if any, commissions were owed. But I think it's significant when you look at the contract, and it's the only contract that was before the jury, it was the only contract submitted to the jury within the jury instructions, is the employment agreement. What does that tell us? Well, the employment agreement says that it's limited to commissions, to cases that are pending on the date of termination. It goes on to say, specifically, if Wright's employment is terminated or he terminates his employment for any reason, the commission's split allocations in paragraph A above, which is the 15% commission of all commissions received, other than for renewable commissions as described above, shall remain in effect for two years following termination of employment, and this is important, for cases that are pending on the date of termination. It goes on to say, cases that are pending shall mean and refer to all cases where the company has performed any of the services described on exhibit A. There was no dispute as to those cases that predated September 17th and those cases that post-dated that. In fact, the appellant kept track of that. He had a file which he called CW's new cases submitted since 9-17-13. There is no ongoing obligation. Now, what the evidence did show, through admissions, through testimony, through documents, and judicial notice, is that, in fact, this contract ends on September 17th of 2013. The testimony was not refuted. In fact, both parties testified and agreed that that, in effect, is the date that this contract ended. We are suggesting that it is not only judicially admitted, but it's within their answer, because, again, they admitted that, in fact, that was the date. In Byron's counterclaim, which would be the appellant's counterclaim, he alleges the parties proceeded in accordance with the terms of the employment agreement through September 17th, 2013, at which time they mutually agreed to terminate the employment agreement. As of that date, the contract ends. So then we have to find, is there, in fact, an extension? Is there a modification? Is there some amendment to that contract? Well, there can't be, because the evidence was that those discussions about potentially doing anything with respect to a modification don't occur until, according to the testimony of Mr. Byron, Counselor, is Missouri law you're relying on stated in Heard v. Stahl? Do you have anything else? It is Missouri law, Your Honor, yes. Because I read Heard v. Stahl as contrary to your argument, frankly. Has the Supreme Court of Missouri addressed the question more recently? And I'm sorry, Your Honor, I didn't hear you. In terms of which question? Well, the question of the relying on an unflated contract. There's a long discussion in Heard of tying issues by consent, and the only reason that didn't apply was it didn't fit the record. And, Your Honor, we did that. I'm sorry. Well, it does here. Where do I look besides Heard v. Stahl for the notion that an issue tried by consent, if it's inconsistent with a pleading, cannot be the basis for recovery? Your Honor, I would disagree. We did not try the case with consent as to the modification or extension of the contract. In fact, the issue was raised with the Court in numerous instances, and I would point to the fact that throughout this case. I understand your position, counsel. I was asking for authority. The authority, Your Honor, is from, I would cite to the case of American Family Insurance v. Hollander, which is actually an Eighth Circuit opinion, and from the standpoint from a party can acquiesce a trial to an unflat issue, it must not be inconsistent with the position taken by the non-moving party earlier in the proceedings. Throughout the trial, we continually argued that, in fact, this contract terminated on September 17, 2013. As the appellant attempted to amend their answer, to change the admission to a denial, Judge Hamilton, in noting that we had throughout the trial maintained the position that the contract ended and not ever consented to the modification or extension of this contract, Judge Hamilton said, I think there's a whole lot of prejudice. And what she is responding to is the request to amend the answer. They tried this on the basis that you guys, Byron, had said it was terminated. But the bottom line is from the get-go of the case, you said that. You admitted that it terminated. I don't know why they would have objected. Excuse me, counsel. Did you argue this position post-verdict to Judge Hamilton? We did, Your Honor. And what was her ruling? As counsel has indicated, the opinion You argued that this verdict can't be tried by consent because it's inconsistent with prior positions and rulings. We did argue it in our post-trial motions, Your Honor, but the opinion, as indicated by counsel, is very brief, and it really does nothing more than go through in an accounting and come to a number, which I would suggest. Wait a minute. I understand that the court first ruled there's going to be a remitted there and then there was substantial briefing as to amount. That's correct. Are you now referring to the second briefing or to the briefing prior to the remitted ruling? The briefing did include argument and extensive briefing with respect to the question of the contract termination and the fact there was no modification. You are correct, Your Honor, that the second, we'll call the second phase of briefing, focuses on the accounting. You argued it prior to the remitted ruling, which rejected the argument without explanation. Is that the landscape? I don't recall within the opinion Judge Hamilton spending any time discussing the modification of the contract or whether it was modified or not. I would argue again that, in fact, during the course of this trial, because we maintained the position that the contract had, in fact, terminated, that we never conceded or agreed that, in fact, a modification was consented to. In fact, our position was it couldn't have because the contract ends September 17th, and at the very earliest any of the discussions took place relative to a modification or amendment of the contract. According to the testimony of the appellant, that doesn't happen until sometime on or after September 24th. So there is a period of time in which there is no contract. Now, I would like to address, if I could... Well, you do understand that a post-termination new contract that effectively modifies the prior contract can be perfectly legitimate regardless of the no oral modification clause, and it may well fit within the Heard v. Stahl line of cases. And I don't think it does in this case, though, Your Honor, because there is no consent. There was no agreement of modification. There's no course of conduct to look to that would tell us that, in fact, the parties had any agreement that, in fact, this contract would go forward. You are correct. This contract does include a claim that, in fact, the contract requires any modification to be in writing and signed by both parties. There is such language that did appear, and obviously there is no such modification that ever took place. I would like to address the question of... I just have a quick question. Did the jury instructions limit the contract by termination date, by the September termination date, or was that something that the jury was asked to find? What was the contract, and what was the ending date? No. The contract submitted to the jury, and it was done through the MAIs, through a verdict director, was the contract at issue. It was the employment agreement. There was no dispute as to what contract was pending. The instruction, as I recall it, was the typical MAI that you would expect to find. The parties enter into a contract, which was the employment agreement. There was no provision contained within that jury instruction that the jury would also have to find that, in fact, a modification happened. There was certainly nothing referenced within that instruction about the voicemail. And counsel, I think, cited it correctly as to what that voicemail said. It said nothing more than, before we could justify paying out $500,000, we would need to get to those figures of 3 point some million, $4.8 million. What counsel didn't mention is, at the time of trial, that, in fact, the appellant had already received $500,000. What they are suggesting with their argument now is that, in fact, he should have received over a million dollars in commissions, and to come to that conclusion, you have to completely change the formula that they were using. Byron appellant agreed throughout the trial as to the calculations. Exhibit 56 and Exhibit Triple D were not disputed. They were the ones that the parties used, and when you do that, it is really a simple calculation of taking 15% of commissions received, less commissions already received by Byron, less expenses paid by Byron, and add to that payments made by right to Byron through the process. In the closing argument of counsel, there is no dispute as to what numbers should factor into that calculation and what numbers should factor into the formula. In fact, when you do that, the difference that you'll find is between those cases that predate September 17th and those cases that post-date September 17th. Keeping in mind the court did not allow the amendment of the pleadings to include any claim for quantum merit, there is simply no basis to recover that. When you plug those factors in or those figures into the formula, you come out to $49,628.59. I think that is the calculation that Judge Hamilton did within the remediator award. The difference was she didn't take into account the $46,000 payment that had been made by the appellee to the appellant. Getting back to the voicemail, there is no evidence in any way to suggest that, in fact, there's a contract. It was not argued to the jury. It was not presented to the jury. The statement does not include any of the material facts that a contract would otherwise have to include. There is no evidence whatsoever to support the $500,000 award, and there is no basis to include that as part of the judgment. It is something that is being done after the fact, and we think it is being done because the court did not allow the appellant to include the claim of quantum merit. There is an additional claim for damages. Counsel didn't identify it specifically, but it's referred to as the AXA payments, in which they have argued in the brief it should also be included within the damage award and provides a basis for the $500,000. I would ask the court, as you note within the briefing, AXA is an insurance company that paid commission two times by mistake. It paid it both to the appellee and also to the appellant. What they are suggesting is that someday AXA may come and request one of them, particularly the appellant, to have to pay that back. It has not been demanded. There was no evidence before the jury at the time of the trial as to whether any claim had been made for any of that money, and Judge Hamilton correctly excluded it from any argument and excluded it from any damage calculation. In fact, she said, at this point, neither party in this lawsuit is out that $152,000. I don't think anybody can say, either side can say, that $152,000 has damaged them because nobody has paid it. So at this stage, I don't think anybody can claim that as damages. They do within the brief argue that that somehow substantiates and supports the damage claim. We would suggest it does not. We are asking that the court reverse the remediator only from the standpoint of the calculation. We think the calculation should, as you go through the numbers, which are not disputed, when you look at the closing argument of the appellant, he agrees and provides the very same numbers throughout the calculation that we argued, throughout each one of the elements, that the number should actually be $49,628.59. We argue that if, in fact, the court finds that a new trial is not warranted and the other relief is not substantiated. I see my time is up. If there's any questions, I'm certainly happy to answer those. Thank you, Your Honor. Thank you. All right, counsel, you have a minute and two seconds. Thank you, Your Honor. With regard, first of all, to Federal Rule 15b, if an issue is tried by consent, it does not require an amendment of the pleadings. I just asked whether you'd made the motion. We did make a motion to amend the pleadings, Your Honor. I think that you will find that on appendix of page 1247, based on the fact that the issue of quantum merit was tried by consent of the parties. In this case, the jury instruction did not specifically talk about the employment agreement. I'm sorry, what was that page number? It is 1247, Your Honor.  With regard to the issue before the jury, the jury instruction did not limit the jury to the four corners of the employment agreement. The jury instructions in this case were not objected to, and the jury instruction read, for damages, if you find in favor of Defendant Byron Financial on Defendant Byron Financial's claim for breach of contract, you must award. In this case, it wasn't breach of employment agreement. It was breach of contract, and this jury instruction was consented to by the opposing party. In this case, the case cited by counsel, the American Family Insurance case versus Hollander, is illustrative. In that case, this court held, here, American Family knew of Hollander's intent to litigate the unpleaded claim and had the opportunity at trial to cure any surprise by objecting to evidence. It did not. In this case, they consented to the trial of the cases, post-September cases, by failing to object to the evidence. That evidence was 180 degrees opposed to their theory of the case, which is those cases. The only reason for that to be in there is what you're saying. That's the only reason, Your Honor, because it was exactly... It wasn't equivocal. It didn't go to both claims or whatever. Not at all. It was the exact opposite of what they were saying. I see my time is up, if Your Honors don't have any questions. Thank you so much. In this case, we... Can I ask a question? Yes. I wonder, what's your current thinking about a new trial? Are you waiting for... I think that we're entitled to a new... ...developments. I'm sorry? Are you waiting for further developments? Waiting for further developments. I believe that under the Seventh Amendment and under the law, we're clearly entitled to a new trial if we choose not to accept the judge's verdict. I just wondered if that issue, what seems to... There's no reason why it needed to be raised directly, but it's lurking in the case. I'm just curious. I think the issue is still there, Your Honor. So, thank you, Your Honors. In this case, we ask that you reverse the judge's decision and reinstate the jury's verdict. Thank you. Thank you, counsel. The case has been well argued and it is submitted. We're going to take a ten-minute break.